(108 So. 591)

## COPELAND BROS. REALTY CO. et al. v. JONES.  (6 Div. 629.)

(Supreme Court of Alabama.   April 22, 1926.
Rehearing Denied May 20, 1926.)

**1. Corporations ⬡503(1).**

Under Code 1923, § 10471, domestic corporation may be sued in any county in which it does business by agent or was so doing when cause of action arose.

**2. Appeal and error ⬡1012(1).**

On issue under plea in abatement, finding that corporation was doing business by agent in county when cause of action arose, which is not plainly contrary to great weight of evidence, will not be disturbed on appeal.

**3. Appeal and error ⬡1058(1).**

Exclusion of answers to certain questions is not prejudicial error, where evidence sought to be introduced is otherwise admitted.

**4. Corporations ⬡591—Under claim that another corporation had succeeded to interest of defendant before cause of action for services arose, where defendant's manager testified he had notified men of change, testimony of another employee that he had not been notified held properly admitted.**

In action by one employee against corporation for services, where defendant claimed that before cause arose another corporation had succeeded to its interest, and defendant's manager testified that he had told men that concern had changed and was under new name, evidence of another employee that he was not notified of any change in name of company *held* properly admitted.

**5. Corporations ⬡443.**

Conveyance of real property by corporation must be made in name of corporation, subscribed or signed by officer or agent having authority in writing, in view of Code 1923, § 6838.

**6. Appeal and error ⬡1011(1)—Corporations ⬡591—Finding of trial court that another corporation had not succeeded to interest of defendant before claim for services and lien upon lumber arose held sustained on conflicting evidence, and would be affirmed (Code 1923, § 8901).**

Finding of trial court that another corporation had not succeeded to interest of defendant corporation before claim for services and lien on lumber, under Code 1923, § 8901, arose, *held* sustained on conflicting evidence, and would be affirmed by appellate court.

**7. Attachment ⬡312—On finding lumber liable to satisfaction of writ of attachment, trial court should have assessed value at time of interposition of claim of each article separately as far as practicable (Code 1923, §§ 8901, 10377).**

Upon finding that lumber on which lien was claimed for services under Code 1923, § 8901, was liable to satisfaction of writ of attachment, trial court should, as far as practicable, have assessed value at time of interposition of claim of each article separately, as far as practicable, under section 10377.

**8. Appeal and error ⬡1153—Where trial court failed to assess value of lumber claimed liable to satisfaction of writ of attachment at time of interposition of claim, appellate court held authorized to complete judgment by assessing value (Code 1923, §§ 10377, 10378).**

Where trial court, after finding lumber liable to satisfaction of writ of attachment, failed to assess the value at time of interposition of claim under Code 1923, § 10377, appellate court *held* authorized to complete judgment by so assessing value, in view of section 10378.

Appeal fom Circuit Court, Pickens County; S. F. Hobbs, Judge.

Action by J. W. Jones against Copeland Bros. Realty Company, and intervention of claim to property attached by Talmage Copeland.   From the judgment, defendant and claimant appeal.   Transferred from Court of Appeals under Code 1923, § 7326. Corrected and affirmed.

T. B. Ward and J. M. Ward, both of Tuscaloosa, for appellant.

A corporation must be sued in the county of its residence, or where it does business. Code 1923, §§ 10467, 10471.   Agency can only exist by the will of the principal.   31 Cyc. 1215.   The claimant had a lien on the lumber concurrent with that of the plaintiff.   Cooley v. Tullas, 115 Miss. 268, 76 So. 263.

Patton & Patton, of Carrollton, for appellee.

The agent's authority as to third persons is what it appears to be, and is prima facie coextensive with the requirements of the business.   Louisville Coffin Co. v. Stokes, 78 Ala. 372; Gibson v. Snow Hdw. Co., 94 Ala. 346, 10 So. 304; Montg. Fur. Co. v. Hardaway, 104 Ala. 100, 16 So. 29; Piedmont & Ar. L. I. Co. v. Young, 58 Ala. 476, 29 Am. Rep. 770.   Apparent power, if authorized or sanctioned by the corporation, is the equivalent of actual authority.   Tenn. River Transp. Co. v. Kavanaugh, 101 Ala. 1, 13 So. 283.   When third parties have dealt with an agent clothed with general powers, the agency continues as to them, after revocation, until they have notice thereof.   Wheeler v. McGuire Co., 86 Ala. 398, 5 So. 190, 2 L. R. A. 808.

MILLER, J.   This suit was commenced by J. W. Jones against the Copeland Bros. Realty Company, a corporation, by attachment to enforce a lien created by statute on lumber for wages due him amounting to $236.55 for hauling, loading, or manufacturing timber into this lumber for the defendant.   Section 8901, Code of 1923.   This suit was commenced in the circuit court of Pickens county.   The defendant filed a plea in abatement going to the

jurisdiction of the court, which was overruled, stating that:

"Its home office was in Tuscaloosa, Tuscaloosa county, Ala., and at the time of filing of this cause and for some time prior thereto the defendant was not engaged in business in the county of Pickens by agent or otherwise, and said cause of action is not based on work and labor done by the plaintiff for the defendant in Pickens county."

The plaintiff joined issue on this plea. It was tried by the court without a jury, and it found the issue in favor of the plaintiff.

[1, 2] A domestic corporation may be sued in any county in which it does business by agent or was doing business by agent at the time the cause of action arose. Section 10471, Code of 1923. There was much evidence tending to show this defendant was doing business by agent in Pickens county when this cause of action arose. There is much evidence to the contrary. The issue was tried by the court without a jury on the oral testimony of all the witnesses. The finding by the court does not appear to be plainly contrary to the great weight of the evidence, so, under the circumstances, it will not be disturbed by this court. Cox v. Stollenwerck, 213 Ala. 390, 104 So. 756; Fleming v. Moore, 213 Ala. 592, 105 So. 679, headnote 12.

The sheriff executed the writ of attachment by levying on about 1,450 pieces of pine board lumber aggregating approximately 13,500 feet. Talmage Copeland made affidavit and gave bond claiming that this lumber attached belonged to him and was in his possession when attached; that it belonged to Delma Lumber Company, a corporation, which owed him for wages; and that he had a lien on the lumber for his services in aiding in manufacturing it; that this corporation sold it to him in part payment of the amount due him; and that this lumber was not the property of the defendant the Copeland Bros. Realty Company.

The issue between the plaintiff and claimant was this: The plaintiff avers that this lumber claimed by the claimant is the property of the defendant Copeland Bros. Realty Company, and is liable to the satisfaction of the writ of attachment, and the claimant joined issue thereon. The defendant filed no other pleas. The judgment simply recites issue was joined between the plaintiff and defendant.

The plaintiff, claimant, and defendant tried the two causes together before the court without a jury. The court held from the evidence that this lumber was the property of the defendant Copeland Bros. Realty Company, incorporated, and liable for the satisfaction of the writ of attachment, and found that the defendant was indebted to the plaintiff in the sum of $253.85, under count 3 of the complaint for work and labor done in and for hauling and preparing the lumber levied on for market, under section 8901 of the Code of 1923, and plaintiff had a lien on this lumber under that statute for the $253.85, and ordered it sold to pay the judgment and costs of the cause and the balance, if any, to the defendant. The claimant and defendant appeal from these judgments, and assign the same alleged errors, but each assigns them separately and severally.

The evidence was without dispute that there was due the plaintiff the sum of $236.65 with interest for cutting and hauling logs and loading lumber. The evidence for the plaintiff tended to show it was due him by the defendant corporation, and the evidence for the claimant and defendant tended to show that it was due him by the Delma Lumber Company, a corporation. It was due under a contract made by plaintiff with Talmage Copeland as manager and as agent. The undisputed evidence shows there was a sawmill for manufacturing timber into Lumber in Pickens county, and it was owned and run by the defendant corporation, and Talmadge Copeland was its general agent and manager and made contracts with plaintiff and others.

The evidence for the defendant and claimant tended to show that after or about July 1, 1923, the Delma Lumber Company, a corporation, was organized, and Marvin Copeland, Mozelle Copeland, and Talmage Copeland conveyed to it by deed this sawmill, equipment, tracks, and certain land (several hundred acres) described therein, in Pickens county; and the sawmill after July 1st was owned and operated by the Delma Lumber Company, and not the defendant.

The evidence of the plaintiff tended to show that Talmage Copeland, after July 1, 1923, continued as general manager, and made contracts with the laborers just as he did prior to July 1, 1923; that the laborers were paid for their services by checks signed by the defendant, as they were before the 1st of July, 1923. Marvin Copeland was president of the defendant corporation, and he was also president of the Delma Lumber Company, a corporation. Talmage Copeland was agent and manager for both corporations. He made the contract with plaintiff. Marvin Copeland, his wife, and Talmage Copeland owned the stock in the Delma Lumber Company, and Marvin Copeland, B. R. Copeland, and J. J. Copeland owned the stock in the defendant corporation.

The foregoing is the tendency of some of the testimony in the two suits.

[3] The court sustained plaintiff's objections to these questions asked Talmage Copeland, witness for claimant and defendant:

"Did you make the contract [with plaintiff] for the Copeland Bros. Realty Company or for the Delma Lumber Company? I will ask you if you made any contract for the Copeland Bros. Realty Company to do any work in this county after July 1, 1923?"

This was an issue under the evidence between the parties. Neither the defendant nor the claimant can complain at these rulings of the court, as this witness had just testified that:

"After July 1, 1923, I did not as agent of the Copeland Bros. Realty Company make any contract with plaintiff, Will Jones, to do any work for said company. The work and labor on the lumber for which the plaintiff is suing was done either in September or October of the year 1923. I made the contract with him myself."

And he afterwards was allowed to testify:

"At the time I made the contract with Will Jones for work and labor for which he is now bringing suit, I was not in the employ of the Copeland Bros. Realty Company; I was in the employment of the Delma Lumber Company."

It appears he was allowed to give the circumstances as he saw them, which answered the question. And the witness was allowed to testify that prior to July 1, 1923, he was managing this business for the defendant, and after July 1, 1923, he was managing it for the Delma Lumber Company, and not for the defendant, and was not then agent or manager for the defendant.

[4] Talmage Copeland, witness for claimant and defendant, testified that about July 1, 1923, he "told the men that the concern had changed, and was then under the name of Delma Lumber Company." So the court did not err in allowing E. L. Speed to testify that he "was not notified of any change in the name of the company." This witness worked at this mill before and after July 1, 1923. The court did not err in overruling the defendant's objection to this question asked the plaintiff:

"Will, did you have any contract made with Talmage Copeland about July 1st to haul lumber and load cars for Copeland Bros. Realty Company?"

He answered:

"Yes, sir; I worked under contract."

Then he explained as follows:

"The first contract I had was cutting and hauling logs, and this contract was made in the early part of the year 1923. Then the next contract I made with Talmage Copeland to load some cars was on or about the 15th of October, 1923. * * * The first contract I had was the early part of the year 1923. Mr. Talmage Copeland then employed me to cut and haul logs. The next or other contract that I had was made in October, 1923. There was no specification as to time or limit as to how long the first contract was to last. I just had a contract to cut and haul logs for so much a thousand. I quit hauling logs on the first contract about October 15, 1923. The money that I am suing for was for work done during October and November under the second contract. I am not claiming anything at all under the first contract."

This evidence tends to show that plaintiff continued to work after July 1, until October 15, 1923, under the contract with the defendant. This was a circumstance tending to show the mill was operated by the defendant after, just as it was before, the 1st of July, 1923.

The court sustained objection to the questions of claimant to Talmage Copeland, the claimant, as follows:

"What was your monthly salary? * * * Was this property sold to you? I will ask you if this property attached by Will Jones was transferred to you? * * * As a part payment on your salary?"

The court erred in sustaining objections to these questions, but neither the claimant nor the defendant was injured thereby. The witness, claimant, was claiming this lumber by purchase from the Delma Lumber Company prior to the levy of the attachment on it in part payment for services rendered this corporation by him after July 1, 1923. These questions called for evidence tending to sustain his title to the lumber. But the court afterwards cured these errors by allowing this witness to testify:

"The Delma Lumber Company was indebted to me for salary at the time I claimed the lumber that was attached by the plaintiff, was transferred to me, in the sum of $675."

And he also testified:

"I had a transaction between myself and the Delma Lumber Company prior to the attachment suit on the lumber involved, and along about November 15th the Delma Lumber Company could not pay my salary, but it gave me the lumber that was attached by the plaintiff to apply on salary due me for the Delma Lumber Company. I credited the Delma Lumber Company on salary due me by it the value of the lumber. I credited the company with the sum of three hundred and some odd dollars. At the time of this transaction I was not working for any one else besides the Delma Lumber Company. My only employer was the Delma Lumber Company. I had some stock in the company."

The court sustained plaintiff's objection to this question asked the claimant:

"Were Copeland Bros. Realty Company operating that plant over there at Delma at that time?" [meaning when he purchased this lumber on his salary].

If the court erred in this ruling neither the claimant nor the defendant was injured by it, as this witness fully answered the question afterwards when he stated:

"The Delma Lumber Company was operating the lumber plant at Delma during the months of July, August, September, October, and November, 1923. * * * After July 1, 1923, Copeland Bros. Realty Company did not do any business in Pickens county, Ala."

It appears from the evidence that the defendant the Copeland Bros. Realty Com-

pany owned this sawmill and the timber and lumber. The appellants state in their brief:

"The undisputed evidence in this cause shows the following facts to wit: 'The entire sawmill business and all of the property, timber, and lumber that was formerly owned by the defendant Copeland Bros. Realty Company were duly and legally transferred to the Delma Lumber Company by deed recorded in Pickens county, Ala., which transfer was the latter part of June, 1923, and before July 1, 1923.'"

[5] The name of this corporation, Copeland Bros. Realty Company, the defendant, does not appear in nor is it signed, to this hereinbefore mentioned conveyance; yet this deed describes and attempts to convey this sawmill, certain lands, and timber in Pickens county to the Delma Lumber Company. This conveyance is signed by Marvin Copeland, Mozelle Copeland, and Talmage Copeland, individually. They are named as grantors, parties of the first part therein; and the Delma Lumber Company is named as grantee. The title of the corporation, Copeland Bros. Realty Company, the defendant, to this property, was not conveyed by this deed to Delma Lumber Company; and it is the only conveyance in the evidence. It does not appear on its face even as an attempt to be a conveyance by the defendant corporation to the Delma Lumber Company. When a conveyance of real estate is made by a corporation, "the name of the corporation must be subscribed or signed to the conveyance, and it must be subscribed or signed by an officer or agent having authority in writing." Jinwright v. Nelson, 105 Ala. 399, 404, 17 So. 91; section 3355, Code of 1907, now section 6938, Code 1923; Graham v. Partee, 139 Ala. 310, 35 So. 1016, 101 Am. St. Rep. 32; Amerson v. Corona, etc., Co., 194 Ala. 175, 69 So. 601, headnote 3; Dothan, etc., Co. v. Bell Lbr. Co., 193 Ala. 399, 69 So. 419. The property in this conveyance was assessed by the defendant in 1923 for taxes. In 1924 it was not assessed by the defendant on the Delma Lumber Company but the tax assessor placed it on the tax list under the name of the defendant as owner. The Delma Lumber Company assessed no property for taxes in Pickens county in the year 1923 or 1924. This deed conveying this land, timber, and mill to the Delma Lumber Company is dated June 29, 1923, and was filed and recorded on October 2, 1923; yet there is evidence that after July 1, 1923, as before, the laborers at the mill were paid for their services by checks signed by the defendant, and not by the Delma Lumber Company.

Burgen, a witness for plaintiff, who worked at this mill before and after July 1, 1923, testified:

"I suppose that Mr. Talmage Copeland was the manager of the Copeland Bros. Realty Company, as he would come over and check up the lumber. He told me to keep on with my contract. I was talking to him on one occasion, when there were some rumors that the Copeland Bros. Realty Company was bankrupt, when he had come over where we were working, and I asked him about the rumors, and he then told me that about the 1st of July, 1923, that the Copeland Bros. Realty Company had changed or sold out to the Delma Lumber Company, and I says, 'Will this conflict with our work'? 'No,' he said, 'it is the same thing—no change at all; just changed the name so as to keep this business in Pickens county separate from the other business in the other place.'"

[6] From the foregoing testimony and other circumstances not necessary to be mentioned, there was evidence tending to show that the defendant owed the plaintiff the sum of $253.85, including interest, for wages for hauling and preparing the lumber attached for market; that the lumber belonged to the defendant, that plaintiff had a lien on it for his wages, and that the lumber was liable to the satisfaction of the writ of attachment, and that this lumber did not belong to the Delma Lumber Company, and that claimant derived no title to it by his purchase of it from the Delma Lumber Company. It is true there is much evidence to the contrary tending to show this lumber belonged to the Delma Lumber Company, and it sold it to the claimant prior to the levy of the attachment. The evidence is in clear conflict on the issues between the parties. The trial court saw the witnesses, heard them testify, and was in better position than this court to determine what credibility should be given to their testimony. There is ample evidence to sustain and support the finding of facts on which the judgments are based. We are not of the opinion that the conclusions reached by the trial court are plainly erroneous, and the judgments must be affirmed. Senior v. State, 205 Ala. 337, 87 So. 592; Bell v. Blackshear, 206 Ala. 673, 91 So. 576, headnote 3, section 8901, Code of 1923.

[7, 8] The claimant gave bond in the sum of $500, and took possession of the lumber attached. The trial court, when it found the lumber claimed was liable to the satisfaction of the writ of attachment, should, as far as practicable, have assessed the value at the time of the interposition of the claim of each article separately. This the court failed to do. Section 10377, Code of 1923. So this court will complete the judgment by assessing the value of the property claimed and attached, to wit, "1,450 pieces pine boards B and better grade, varying in width from 1x4 to 1x12, from 8 to 16 feet long, containing approximately 13,500 feet," at $250. See section 10378, Code of 1923, which will show a necessity probably for the value of this property to be assessed by the court in this case.

The judgments as corrected will be affirmed.

Corrected and affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.