[Amerson v. Corona Coal & Iron Co.]

# Amerson *v.* Corona Coal & Iron Co.

## *Death of Servant.*

(Decided June 3, 1915.   Rehearing denied June 30, 1915.
69 South. 601.)

1. *Trial; Directing Verdict.*—It is only when there is no evidence tending to establish plaintiff's case that the court may direct a verdict for defendant; the court having no power to judge of the sufficiency of the evidence, or which of its conflicting tendencies should be adopted.

2. *Master and Servant; Injury to Servant; Identity of Master.*— The evidence examined and held to make it a question for the jury as to whether defendant sued by another, was the master in operating the mine.

3. *Corporation; Contract; Form.*—A contract of a corporation is proper in form if subscribed by the corporation, by its agent (naming him) and concludes "in witness whereof it (naming the corporation) by its agent, has hereunto set its seal, and the said agent has hereunto subscribed his name.

4. *Same; Seal; Presumption.*—The presence of a corporate seal on a contract purporting to have been executed by such corporation establishes prima facie the contract as its act, dispensing with proof of its execution by the proper officers.

5. *Master and Servant; Injury to Servant; Evidence.*—Any evidence, however slight, tending to show who was operating a mine when an employee therein was killed, was competent as tending to fix liability, and to identify the master.

6. *Appeal and Error; Assignment; Signing.*—Assignments of error need not be signed by counsel as the formalities of a complaint is unnecessary; rule 1, Supreme Court Practice requiring merely a concise statement written on the transcript as to what the error consists of.

APPEAL from Walker Circuit Court.

Heard before Hon. J. J. Curtis.

Action by M. M. Amerson, as administrator against the Corona Coal & Iron Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

The complaint alleges that plaintiff's intestate was employed by defendant, and while engaged in the duties of his employment a piece of rock or slate fell from the roof of the mine, striking plaintiff's intestate and killing

him. The first count declares for a failure to furnish plaintiff's intestate a reasonably safe place in which to work. The second count declares as for a defect in the ways, works, machinery, and plant, in that the rocks or slate were loose, unsafe, and liable to fall. The third count declares on the negligence of Norris, the superintendent, in giving negligent orders. The fourth count declares upon the negligence of the same superintendent in negligently placing plaintiff's intestate at a place where the rock or slate was loose. The fifth count was like the first, and went out on demurrer. The contested question seems to have been whether Freeman or the Corona Coal & Iron Company was the employer. The evidence sufficiently appears from the opinion.

RAY & COONER, for appellant.

DAVIS & FITE, for appellee.

THOMAS, J.—(1) In *Tobler v. Pioneer Mining & Manufacturing Co.,* 166 Ala. 517, 52 South. 86, this court declared the rule to be that where the plaintiff has introduced his evidence, and it does not tend to prove the cause of action, the court may refuse to hear the evidence of the defendant; but it is only in the absence of all evidence against the defendant that the court should direct a verdict. If there be any evidence which tends to establish the plaintiff's cause, the court should not withdraw the case from the jury, or direct a verdict. It is not for the court to judge of the sufficiency of the evidence, or to decide which of conflicting tendencies of the evidence should be adopted by the jury.—*McCormack Co. v. Lowe,* 151 Ala. 313, 44 South. 47; *M., J. & K. C. B. R. R. Co. v. Bromberg,* 141 Ala. 258, 284, 37 South. 395; *Shipp, et al. v. Shelton,* 193 Ala. 658, 69 South. 102.

(2) If there was evidence in the cause tending to show that the Corona Coal & Iron Company was really operating the mine, and not J. S. Freeman, then the court committed error in giving the affirmative charge for the defendant. The evidence showed that the Corona Coal & Iron Company issued checks in its name to pay the injured party and others working with him, such checks being good in the purchase of merchandise at the two commissaries of the company, and that the company deducted from the amount of his. wages certain insurance premiums, as shown by the "cutting blank of the Corona Coal & Iron Company," signed by "Geo. Adams, Timekeeper;" that the checks for time or wages were turned in at the office of the company, and the money was paid thereon by the company; and that the mines being operated belonged to the company, and had so belonged to it for many years. One witness testified how the coal was carried to a side track by mules and thence by motor; that the mules used had been in the mines six years; that he would say that the Corona Coal & Iron Company was the one that had been keeping these mules; that "the commissary at Corona is called the Corona Coal & Iron Company's commissary;" that prior to that time the Corona Coal & Iron Company had operated No. 3 opening and had a blacksmith shop in connection with the mines; that he had seen Jim Freeman "working for the Corona Coal & Iron Company," prior to the time of the injury at Patton, and that he was in and out of the mines and giving orders to his men; that Freeman employed witness to work in the mines; that he had an office "next to the Corona office" where the time sheet was kept, where the time was turned in; that the employees went from there to the Corona Coal & Iron Company's office and got checks in payment for time employed or labor performed. One of the min-

ers, as a witness, stated that he was working for Freeman; and another stated that: "I don't reckon I was working for Mr. Freeman. I was working for the Corona Coal & Iron Company." The evidence showed that Mr. Freeman did not have a commissary, but that the company did.

The defendant introduced a contract between J. S. Freeman and Mr. Pill, for the Corona Coal & Iron Company, of date January 1, 1913, leasing for a period of six months the mine where the accident occurred on January 17, 1913, and introduced a witness employed by Mr. Freeman, who testified that he got checks of the same kind that he had reecived from the Corona Coal & Iron Company at the other mines. Defendant introduced as a witness the general manager of the Corona Coal & Iron Company, who testified that the mine where the injury occurred was being operated under lease by Mr. Freeman, on the day of the injury, under the contract introduced in evidence; and on cross-examination he stated that the mine was owned by the Corona Coal & Iron Company, that their mules hauled the coal on their rails and tracks with the company's tram cars, but that Freeman was in possession under the lease, and that the company's engineers surveyed the mines and filed the plot of the mine in the state department in the name of the Corona Coal & Iron Company. The witness then explained what he meant, in his testimony, by the expression "cut for insurance" from the wages of the injured man.

We are clear from the tendencies of the testimony that the affirmative charge should not have been given, but that the question as to whether the Corona Coal & Iron Company, or J. S. Freeman, was operating the mines on the date of the accident, was for the jury to decide.

(3) There was no error in admitting in evidence the written contract, dated January 1, 1913, purporting to have been signed by the Corona Coal & Iron Company, by John R. Pill, General Manager, and by J. S. Freeman, with the corporate seal of that company thereto affixed. An instrument purporting to be executed by a corporation is held to be in proper form, if it be subscribed by the corporation (naming it), by its agent (naming him), and concludes: "In witness whereof (it) (naming the corporation); by its agent, has hereunto set its seal, and the said agent hath hereunto subscribed his name."—*Graham v. Partee, et al.,* 139 Ala. 310, 35 South. 1016, 101 Am. St. Rep. 32; *Amer. Sav. & Loan Ass'n v. Smith,* 122 Ala. 502, 27 South. 919; *Jinwright v. Nelson,* 105 Ala. 399, 405, 17 South. 91; *Flint v. Clinton Co.,* 12 N. H. 430; *Clark v. Farmers' Woolen Mfg. Co.,* 15 Wend. (N. Y.) 256; 2 Cook, Stockholders & Corp. Law, § 722, note 1; *Parker v. Caro. Sav. Bank,* 53 S. C. 583, 31 S. E. 673, 69 Am. St. Rep. 888.

(4) Acts purporting to be done by a corporation, which presuppose the existence of other acts by the corporation to make them legally operative, are presumed to have been so authorized; and the authority of the indicated officer to act for the corporation is presumed.—*Thorington v. Gould,* 59 Ala. 461; *Bank of the United States v. Dandridge,* 12 Wheat. 64, 6 L. Ed. 552; *Jackson v. Campbell,* 5 Wend. (N. Y.) 574; *Lovett v. S. S. Ass'n,* 6 Paige '(N. Y.) 54; *N. E. M. I. v. DeWolf,* 8 Pick. (Mass.) 56; 2 Rose's Notes U. S. Rep. 537. The presence of the seal of the corporation establishes prima facie that the instrument to which it is affixed is the act of the corporation, and dispenses with the necessity of any proof on the part of the person claiming under it that it was executed by the proper officers of the corporation, or that they had authority to so execute it, or that all

proceedings necessary to legalize its execution were had unless the corporation shall have first rebutted the presumption arising from the presence of the seal.—*Graham v. Partee, supra; Allen v. Alston, Ex'r,* 147 Ala. 609, 41 South. 159; *Green Co. v. Blodgett,* 159 Ill. 169, 42 N. E. 176, 50 Am. St. Rep. 155; *Morrison v. W. G. Co.,* 91 Me. 492, 40 Atl. 542, 64 Am. St. Rep. 264; Angell & Ames on Corp. § 224.

(5) Any evidence, however slight, tending to show who was operating the mines on the day of the accident, was competent, as tending to fix the master, and liability for the injury, if there was liability.

(6) There is no merit in the insistence of appellee's counsel that the assignment of errors be not considered because not signed by counsel. The statutory requirements are: (1) That appellant state concisely in writing in what the error consists.—2 Code 1907, rule 1, p. 1506; *Thompson v. N. C. & St. L. Ry.,* 160 Ala. 590, 49 South. 340; *Brent v. Baldwin,* 160 Ala. 635, 49 South. 243; *Ferrell v. City of Opelika,* 144 Ala. 135, 39 South. 249; *Ashford v. Ashford,* 136 Ala. 631, 34 South. 10, 96 Am. St. Rep. 82. (2) That such assignment be written upon the transcript. The formalities of a summons and complaint are unnecessary.—2 Code 1907, rule 1, p. 1506; *Watson v. Cain,* 171 Ala. 151, 54 South. 610.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.